IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHRYN JO H.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 19-cv-870-DGW[2] |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM and ORDER**

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) Benefits pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for DIB in December 2015, alleging a disability onset date of February 1, 2013. After holding an evidentiary hearing, an ALJ denied the application on August 10, 2018. (Tr. 15-35). The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 8.

1

## Issues Raised by Plaintiff

Plaintiff raises the following issues:[3]

1. The ALJ failed to fully and fairly develop the record in that he did not obtain Dr. Lee's office records for the period October 2012 through January 2015, and records from her hospitalization in July 2016.

2. The ALJ erred in weighing the medical opinions.

3. The ALJ erred in evaluating plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the

---

[3] In the statement of issues at page 14 of her brief, plaintiff sets out a fourth issue, that the ALJ erred in making the RFC assessment. However, she offers no argument in support of that issue beyond the arguments on her first three issues.

2

plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had worked, but not at the level of substantial gainful activity since the alleged onset date. She was insured for DIB through December 31, 2018. The ALJ found that plaintiff had severe impairments of fibromyalgia with back pain, depression, personality disorder, anxiety with agoraphobia, and attention deficit hyperactivity disorder (ADHD).

The ALJ found that plaintiff had the RFC to do light work with both physical and mental limitations. Only the mental limitations are in issue here. The ALJ found plaintiff was limited to (1) learning and engaging in rote tasks that require the exercise of little independent judgment or decision making and can be learned from a short demonstration; (2) work in a stable work setting where there is little change in terms of tools used, the processes employed, or the setting itself, and change, if necessary, is introduced gradually; (3) no interaction with the general public; (4) no work in close coordination with coworkers; (5) only occasional, work-related interaction with coworkers; and (6) no more than occasional interaction with supervisors.

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do her past relevant work as a registered nurse. However, she was not disabled because she was able to do other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in

formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1970 and was 48 years old on the date of the ALJ's decision. (Tr. 200).[4] She said she was disabled because ADHD, borderline personality disorder, depressive disorder, panic disorder and anxiety, osteoarthritis, vitamin B-12 deficiency, COPD, chronic pain, fibromyalgia, ocular hypertension, and conjunctivitis. She said she stopped working on December 31, 2014, because of her condition. (Tr. 216-217).

Plaintiff did some work as a nurse in March 2013 and November 2014 through January 2015, after her alleged onset date. (Tr. 191).

In December 2015, plaintiff said she had difficulties with concentration, memory, understanding, following instructions, and getting along with others. (Tr. 250). In July 2016, she reported that she was getting worse. She said she did not leave the house or drive unless it was a "dire emergency." (Tr. 271). She did nothing and all she wanted to do was "stay at home." (Tr. 275). In October 2016, she said she could barely leave her house. (Tr. 292).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing in April 2018. (Tr. 44). The ALJ asked whether counsel had any objections to any of the materials in the record. He replied that he did not but pointed out that he had recently submitted three witness statements that did not appear yet in the electronic file.

---

[4] Pages 188 through 280 of the transcript were filed separately at Doc. 13.

He did not mention any medical records that were not part of the record. (Tr. 46-47).

Plaintiff testified that she was fired from her last full-time job as a nurse because she was acting erratically. She was going through a difficult time because her father had been diagnosed with Alzheimer's. (Tr. 52).

Plaintiff testified that she could not work because she never knew from one day to the next how she would be feeling physically or mentally. She suffered from stress and anxiety. Appearing at the hearing was very difficult for her. She did not like leaving her house. She usually only left home to give her brother a ride home from work. (Tr. 53-57). She took her medications as prescribed. She did not have side effects. She had problems with medications in the past, but she felt like she was "at a good place right now." (Tr. 59-60).

### 3. Relevant Medical Records

Plaintiff was admitted to the hospital because of increasing depression and suicidal ideation on May 16, 2013. The attending physician was Dr. Elbert Lee. He noted that she had a history of mood disorder that had been unresponsive to multiple anti-depressives. She had been under severe stress because she had recently been fired from her job and one of her former employers was contesting her unemployment benefits. Her father had been diagnosed with Alzheimer's and she felt her sister and brother were taking advantage of him. She had no previous inpatient psychiatric hospitalizations. She was admitted for a trial of Lithium. (Tr. 360-362). She was discharged on May 19, 2013, with a diagnosis of major depressive disorder/rule out bipolar disorder and panic disorder. She was treated

6

with Lithium. At discharge, she was no longer suicidal, her affect was brighter, and she was calmer. She felt she could deal with the distress going on at home. She was to follow up with Dr. Lee. (Tr. 354-355).

Plaintiff's primary care provider was Dr. Sean Flynn. She saw him in July 2013 for back pain and anxiety. She said she was taking a benzodiazepine (e.g., Valium) prescribed by Dr. Lee. On exam, she had appropriate affect and demeanor. Her psychomotor function, speech pattern, thought, and perception were all normal. (Tr. 472-474). Dr. Flynn noted similar findings on psychiatric exam in October 2013. (Tr. 470). His findings were the same in April 2014, except that her thought and perception were "moderate," and insight and judgment were poor. (Tr. 466). She was depressed in December 2014. (Tr. 463).

The first office note from Dr. Lee is dated February 27, 2015. (Tr. 783). Dr. Lee practiced at Sarah Bush Lincoln Outpatient Behavioral Health. The agency requested all records from that office beginning in February 2012. The cover letter responding to the agency's request for records bears a handwritten note: "over 500 pages[;] sent last 2 years 2015-present[.]" (Tr. 696). The visit on February 27, 2015 was for a one-month follow-up. Plaintiff reported that she was "doing okay overall." She was under financial stress and was trying to get a job. She had no medication side effects and no psychosis. On exam, she was pleasant, cooperative, and appropriately groomed. Speech was normal. Her mood was "okay" and her affect was congruent. She had no suicidal ideas. Her thought process was logical and linear. Insight and judgment were "okay." She was alert and oriented times three. She was to continue on her medications. (Tr.

7

783-787). Dr. Lee recorded similar observations in March 2015 and May 2015. (Tr. 772, 781). In April 2015, she was depressed and tearful after having lost many of her photos of her late father, but she was alert and oriented and concentration showed no gross impairment. (Tr. 777).

Dr. Lee noted in June 2015 that plaintiff had recently been arrested for domestic violence. He was concerned that about possible abuse of her medication (Xanax and Adderall) and the possibility that Adderall was making her irritable and contributed to the domestic violence arrest. He stopped those medications and indicated he might consider a trial of a less addicting medicine. On exam, she was irritable and "quite dramatic" when the doctor told her to discontinue her medications. She had no suicidal ideas, and no hallucinations. Her thought process was logical and linear, and insight and judgment were fair. Concentration showed no gross impairment. (Tr. 766-767). In July 2015, he started her on Strattera for ADHD because she complained of problems focusing and concentrating since Adderall was discontinued. No concentration problems were noted on exam. (Tr. 761-762). One month later, she was doing better, and mental status exam was normal. (Tr. 756).

In September 2015, plaintiff was upset because her dog was lost. Strattera was helping her concentrate, but the co-pay was high ($25.00 per month.) (Tr. 751-752). The next month, Dr. Lee wrote that "Due to her problems with panic attacks, agoraphobia, and difficulty with concentration and focus she has been unable to work." Strattera was discontinued because of the cost and it was causing her headaches. On exam, her mood was moderately saddened, but

concentration was normal. (Tr. 745-746). In November 2015, plaintiff was stressed because her mother was sick. She said she had been having more difficulty concentrating and focusing and said that Vyvanse helped her sister. Dr. Lee agreed to prescribe Vyvanse on plaintiff's promise to take it exactly as prescribed and not to divert it or overuse it. On exam, concentration and attention were impaired due to her ADHD. (Tr. 739-740). However, Vyvanse turned out to be too expensive and she discontinued it. (Tr. 733).

Dr. Lee saw plaintiff again in February 2016. Her mother had passed away and she was adjusting as well as could be expected. Mental status exam, including concentration, was normal. (Tr. 727-728). Mental status exam, including concentration, was again normal in March 2016 (Tr. 722-723), April 2016 (Tr. 718), May 2016 (Tr. 714), June 2016 (Tr. 708-709), and July 2016 (Tr. 703-704).

On the same day as the July 2016 normal exam, Dr. Lee wrote a letter stating that plaintiff was totally disabled and unable to work. (Tr. 789).

A little over two weeks after the normal exam in early July 2016, plaintiff presented to Dr. Lee with acute onset of paranoid delusions. She had not slept for the past few days and was anxious and agitated. Dr. Lee noted that she was prescribed Vyvanse and she denied abusing it, although an earlier note said she was unable to afford it. She was also taking Bentyl, recently prescribed by her primary care doctor.[5] Dr. Lee recommended that she be hospitalized, and all medications be stopped. (Tr. 910).

The inpatient records are not in the transcript. However, there is a letter

---

[5] Bentyl is used to treat functional bowel or irritable bowel syndrome. https://www.drugs.com/mtm/bentyl.html, visited on February 19, 2020.

from Dr. John Lauer to Dr. Flynn regarding that admission. Counsel provided Dr. Flynn's records to the agency, and referenced Dr. Lauer's letter in his cover letter. (Tr. 805). Dr. Lauer treated plaintiff during her July 2016 hospitalization. He wrote that he did not start her on anti-psychotic medication because she had not tolerated them in the past. He prescribed Clonazepam (Klonopin) for anxiety. His Axis I diagnoses were psychotic disorder "secondary to medications - most likely" and major depressive disorder – recurrent - severe with psychosis and anxiety. She was to follow up with Dr. Lee after discharge. (Tr. 823-825).

Dr. Lee saw her in his office in August 2016, and he noted that her psychosis was secondary to taking Bentyl and possible Vyvanse. Those medications had been stopped and her psychosis was resolved. He had started her on Klonopin. Mental status exam was normal. (Tr. 904-905).

Mental status exam was again normal in September 2016 (Tr. 899-900), October 2016 (Tr. 894-895), November 2016 (Tr. 889-890), and December 2016 (Tr. 884-885). At the December visit, she was taking Xanax which helped her anxiety and Strattera which helped her concentrate, focus, and pay attention better.

At all subsequent visits with Dr. Lee, he noted normal mental status exams: February 2017 (Tr. 880), May 2017 (Tr. 871), August 2017 (Tr. 863), September 2017 (Tr. 856), October 2017 (Tr. 849), November 2017 (Tr. 842), and January 2018 (Tr. 835).

In March 2018, Dr. Lee completed a form entitled Mental Functional Capacity Report. He indicated that plaintiff would have difficulties in a work setting because of severe anxiety, agoraphobia, and panic attacks. The form did

not ask him to identify the type of difficulties she would have or the severity of her difficulties. He indicated she would miss work four or more times per month. (Tr. 793).

4. **Consultative exam**

In May 2016, Jerry Boyd, Ph.D., performed a consultative psychological exam. Plaintiff said she had mental health problems since the age of six and that she had been fired from her job as a nurse. She was taking Vyvanse and Xanax and they helped "tremendously." Attention, concentration and short-term memory showed no significant impairment. Remote memory was intact. Intelligence was in the normal range, but judgment was impulsive, and maturity was somewhat below age level. Reality testing was intact and thought processes were logical and goal directed. (Tr. 610-613).

5. **State Agency Consultants' Opinions**

In May 2016, Dr. Mehr assessed plaintiff's mental RFC based on a review of the record. He concluded that plaintiff "has the capacity to meet the basic mental demands of competitive" work, limited to unskilled work, little change, and low social contact. (Tr. 79-81). A second state agency consultant agreed after a review of the record in August 2016. (Tr. 98-100).

## Analysis

Plaintiff first argues that the ALJ failed to fully develop the record because the record lacks Dr. Lee's office notes from October 2012 through January 2015 and records from her inpatient psychiatric hospitalization in July 2016.

It is true that an ALJ has a duty to develop a full and fair record. *Smith v.*

*Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); 20 C.F.R. § 404.1512(b). While that duty is enhanced where plaintiff was pro se at the agency level, it is not eliminated where a claimant had counsel. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009)("This duty is enhanced when a claimant appears without counsel...."). However, it is equally true that the claimant has the responsibility for identifying or submitting evidence to demonstrate disability. 20 C.F.R. § 404.1512(a). Further, plaintiff was represented by counsel at the agency level. The ALJ is entitled to assume that a claimant who is represented by counsel is putting forth her strongest case for benefits. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007).

Here, plaintiff's counsel at the agency level raised no objection to the record when asked by the ALJ at the hearing.[6] He did not mention any missing records, suggesting that he did not view the missing records as helpful to plaintiff's claim.

The fact that not every medical record for the period in issue is in the transcript does not necessarily require remand. An omission is significant, and requires remand, only if is prejudicial; plaintiff is required to demonstrate prejudice by "setting forth specific, relevant facts—such as medical evidence—that the ALJ did not consider." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

Plaintiff here fails to demonstrate that the omission of some records is prejudicial. First, she is incorrect in saying that the record lacks Dr. Lee's records from October 2012 through January 2015. Dr. Lee's records from her May 2013 hospitalization were before the ALJ. She is also incorrect in saying that there were

---

[6] Plaintiff's present counsel did not represent her before the agency.

no records of her July 2016 hospitalization. The record contained Dr. Lee's notes and the letter from Dr. Lauer to Dr. Flynn regarding that admission.

Plaintiff offers no reason to suspect that the missing office notes from Dr. Lee would reflect observations any different from the many visits with him that are documented in the record. Dr. Flynn's notes from 2013 and 2014 reflecting fairly normal mental status exams suggest they would not. And, as the ALJ concluded, Dr. Lee's notes document generally benign mental status exams except for the periods of exacerbation in May 2013 and July 2016. The notes of Drs. Lee and Lauer support the ALJ's conclusion that the 2016 psychotic symptoms were medication-induced. Plaintiff does not argue that additional records from that hospitalization contain any information that would be likely to change the analysis. Thus, she has not made the required showing that the omission of the records requires remand. *Nelms*, 553 F.3d at 1098.

Plaintiff also challenges the ALJ's weighing of the medical evidence. She argues that the ALJ could not have adequately judged whether Dr. Lee's opinion was consistent with and supported by the evidence when he did not have all of the medical records. The discussion of her first point is applicable here as well. There is nothing to suggest that anything in the missing records would have changed the ALJ's mind. Plaintiff does not argue that Dr. Lee's opinion was consistent with and supported by the records that are in the transcript, and the ALJ's analysis demonstrates the contrary.

Plaintiff faults the ALJ for assigning "great weight" to the state agency consultants' opinions. She argues that they reviewed only a small part of the

evidence and relied heavily on Dr. Boyd's consultative exam. According to plaintiff, it was illogical to assign great weight to the consultants' opinions while assigning only limited weight to Dr. Boyd's report. This argument ignores what the ALJ actually wrote. He gave limited weight to Dr. Boyd's report because the report "did not provide objective mental limitations," but noted that Dr. Boyd's "clinical observations are instructive." (Tr. 30). The consultants considered Dr. Boyd's clinical observations in formulating their opinions, so there is nothing illogical here.

The ALJ acknowledged, of course, that additional evidence was obtained after the consultants did their review. (Tr. 32). Plaintiff complains that the ALJ erred in conducting his own independent analysis of that later medical evidence.

To the extent that plaintiff is arguing that the ALJ erred by crafting his own RFC rather than relying on a medical opinion, her point is rejected. The ALJ "must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions. . . ." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). The determination of RFC is an administrative finding that is reserved to the Commissioner. 20 C.F.R. §404.1527(d)(2).

Plaintiff takes issue with the ALJ's statement at Tr. 32 that the later evidence "does not show that the claimant has greater mental limitations than those articulated by the DDS reviewers." She offers an extremely selectively view of the later medical evidence in an attempt to show that the ALJ was wrong. See, Doc. 17, Ex. 1, pp. 22-23. However, as the above review of the medical evidence illustrates, the ALJ could reasonably conclude that Dr. Lee's records establish that,

14

aside from the 2013 and 2016 hospitalizations, plaintiff did not experience symptoms that would support greater limitations than those found by the state agency consultants.[7]

This is not a case in which the ALJ indulged his own lay interpretation of medical evidence, and cases such as *Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018), and *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018), are distinguishable on that basis. Rather, the ALJ considered the medical evidence and formulated an RFC assessment based on the record as a whole without relying on his own lay interpretation of the medical evidence. That is the ALJ's proper role. 20 C.F.R. §404.1527(d)(2).

Lastly, plaintiff argues that the ALJ erred in evaluating her statements concerning the intensity, persistence, and limiting effects of her symptoms.

SSR 16-3p supersedes the previous SSR on assessing the reliability of a claimant's subjective statements. SSR 16-3p became effective on March 28, 2016 and is applicable here. 2017 WL 5180304, at *1.

SSR 16-3p eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." SSR 16-3p continues to require the ALJ to consider the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529. *Ibid*., at *10. The new SSR does not purport to change the standard for evaluating the claimant's allegations regarding her symptoms. Thus, prior Seventh Circuit precedents continue to apply.

The findings of the ALJ as to the accuracy of the plaintiff's allegations are to

---

[7] Plaintiff does not argue that the ALJ failed to adequately account for the limitations found by the state agency consultants.

be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

Plaintiff first takes issue with the ALJ's statement that her allegations were "not entirely consistent" with the other evidence in the record. According to plaintiff, the "entirely consistent" language indicates that the ALJ applied an incorrect standard. This argument is borderline frivolous. The "not entirely consistent" language is, as plaintiff asserts, boilerplate language that appears in many ALJ decisions. However, the use of boilerplate language is harmless where the ALJ goes on to give his reasons for his decision. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). The use of the phrase "not entirely consistent" does not suggest that the ALJ used an incorrect standard. The ALJ cited the correct standard at Tr. 23 and discussed the relevant factors in assessing plaintiff's allegations. The ALJ accurately noted at Tr. 27 that a claimant's "credibility" is not at issue.

Plaintiff's argues that the ALJ's evaluation of her statements was an attack on her character, in violation of SSR 16-3p. Doc. 17, p. 24. She is incorrect. The ALJ's evaluation continues to be governed by 20 C.F.R. § 404.1529, and the items

considered by the ALJ fall squarely within that regulation.

Plaintiff argues that the ALJ attacked her character by considering her failure to take her medications in September 2013, leading to an emergency room visit; her domestic violence arrest and Dr. Lee's concern that she was possibly abusing her medicine; her inconsistent statements about her use of marijuana and why her last job ended; and her receipt of unemployment benefits.

Plaintiff's argument about an attack on her character is rooted in this passage from SSR 16-3p:

> Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities or, for a child with a title XVI disability claim, limit the child's ability to function independently, appropriately, and effectively in an age-appropriate manner.

2016 WL 1119029, at *10.

Plaintiff apparently - and incorrectly - reads the above passage to meant that the ALJ cannot consider any fact in the record that might reflect negatively on the her.

Plaintiff argues that the ALJ was wrong to point out inconsistencies in her statements about why her job ended. This argument goes nowhere. Whether she left her job because she was unable to do it, or she was fired for some other reason is certainly relevant to the disability determination. Likewise, her receipt of

unemployment benefits based on her representation that she was able to work was also relevant. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005). Her receipt of unemployment benefits was only one of several factors in the ALJ's analysis, and he did not overly stress it.

Plaintiff complains that the ALJ mentioned her arrest and Dr. Lee's concern about her abusing her medication, as well as her apparent failure to take her medicines in 2013. However, there is no suggestion in the ALJ's decision that he regarded these facts as shedding negative light on her character. He noted these facts in consideration of her testimony that she took her medications as prescribed. Similarly, the ALJ did not conclude that her conflicting statements about her drug use to healthcare providers showed that she had a bad character.

Tellingly, plaintiff ignores the first reason given by the ALJ, that her statements are not consistent with the medical evidence. The ALJ explained that the records of her mental health treatment indicate that, except for exacerbations requiring hospitalization in 2013 and 2016, plaintiff's condition was stable and most mental status exams were normal. And, he explained that her psychotic symptoms at the time of the 2016 hospitalization were caused by medication. Dr. Lee's records show that the psychotic symptoms subsided after the medication was discontinued.

The Court concludes that the ALJ's evaluation of plaintiff's statements was not erroneous. The ALJ's conclusion about her statements was supported by the evidence and was not "patently wrong;" it must therefore be upheld. *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. She has not identified any error requiring remand. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

DATE: February 27, 2020.

DONALD G. WILKERSON
U.S. MAGISTRATE JUDGE